# No. 2014-1788

# In The
# United States Court of Appeals
# For The Federal Circuit

ACHATES REFERENCE PUBLISHING, INC.,

*Appellant,*

v.

APPLE, INC.,

*Appellee.*

Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board in Interference No. 5,982,889

## BRIEF OF APPELLANT
## ACHATES REFERENCE PUBLISHING, INC.

Brad Pedersen, Esq.
PATTERSON THUENTE
PEDERSEN, P.A.
80 South Eighth Street, Suite 4800
Minneapolis, MN  55402
(612) 349-5740

Vincent E. McGeary, Esq.
Michael Cukor, Esq.
McGEARY CUKOR, LLC.
7 Dumont Place
Morristown, NJ  07960-4125
(973) 339-7367

Jason Paul DuMont, Esq.
Wayne S. Breyer, Esq.
Kenneth Ottesen, Esq.
KAPLAN BREYER SCHWARZ
& OTTESEN, LLP.
100 Matawan Road, Suite 120
Matawan, NJ  07747-3913
(732) 687-7990

*Attorneys for Appellant*
*Achates Reference Publishing, Inc.*

**Dated:  December 3, 2014**

2014 – BACHMAN LEGAL PRINTING – FAX (612) 337-8053 – PHONE  (612) 339-9518 or 1-800-715-3582

## CERTIFICATE OF INTEREST

Counsel for Appellants Achates Reference Publishing, Inc. certifies the following:

1.  The full name of every party or amicus represented by me is:

**Achates Reference Publishing, Inc.**

2.  The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

**Not applicable.**

3.  All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

**None.**

4.  The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

| | |
|---|---|
| Brad D. Pedersen | Jason Paul DeMont |
| Eric Chadwick | Wayne S. Breyer |
| Bradley J. Thorson | Kenneth Ottesen |
| **Patterson Thuente Pedersen, P.A.** | **Kaplan Breyer Schwarz & Ottesen, LLP (successor to DeMont & Breyer, LLC)** |
| Vincent E. McGeary Michael Cukor, formerly of **Gibbons, P.C.**, now of **McGeary Cukor, LLC**. | |

December 3, 2014      /s/ Brad Pedersen
                      BRAD PEDERSEN
                      PATTERSON THUENTE PEDERSEN, P.A.
                      80 South Eighth Street, Suite 4800
                      Minneapolis, MN  55402
                      Telephone:  612-349-5740
                      Facsimile:   612-349-9266
                      *Counsel for Appellant*

i

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ................................................................................. i

TABLE OF AUTHORITIES .................................................................................. iii

TABLE OF ABBREVIATIONS ...............................................................................v

STATEMENT OF RELATED CASES ................................................................ vii

I.   STATEMENT OF JURISDICTION ...................................................1

II.  STATEMENT OF THE ISSUES .......................................................1

III.  STATEMENT OF THE CASE ..........................................................2

  A.  Statement of Facts ...............................................................2

  B.  Relevant Procedural History of the Inter Partes Review .............................9

IV.  SUMMARY OF THE ARGUMENT .........................................14

V.  ARGUMENT.......................................................................................20

  A.  Standard of Review ..........................................................20

  B.  The Board's Authority to Institute the IPR Was Proscribed by Statute; Therefore, the Board's Issuance of the Final Written Decision Was Ultra Vires .......................................................21

  C.  The Board Misinterpreted Section § 315(b) and Patent Office Regulations, Erroneously Requiring Achates to Prove that the Board Lacked Authority..........................................................30

  D.  The Board Arbitrarily and Capriciously Denied Achates Discovery of Apple's Executed Agreements and Relied On a Non-Evidentiary Sample SDK Agreement To Determine Its Authority Under Section 315(b) .........35

VI.  CONCLUSION AND RELIEF REQUESTED .........................................42

CERTIFICATE OF COMPLIANCE....................................................................44

CERTIFICATE OF SERVICE .............................................................................45

ADDENDUM

# TABLE OF AUTHORITIES

**Cases**                                                              **Page(s)**

*Align Tech., Inc. v. ITC*, 2014 WL 3537066,
    111 USPQ.2d 1855 ..................................................................18, 27, 33

*Arris Group, Inc. v. C-Cation Technologies, LLC*, IPR2014-00746,......................39

*Belkin Int'l, Inc. v. Kappos*, 696 F.3d 1379 (Fed. Cir. 2012) ............................20, 30

*Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)..................................20, 25

*Dickinson v. Zurko*, 527 U.S. 150 (1999) ................................................................25

*General Electric Company v. Transdata, Inc.*, IPR2014-01380 .....................38, 39

*In re Gartside*, 203 F.3d 1305 (Fed. Cir. 2000).........................................15, 20, 24

*In re Antor Media Corp.*, 689 F.3d 1282 (Fed. Cir. 2012) ....................................20

*Intel Corp. v. United States Int'l Trade Commiss'n*,
    946 F.2d 812 (Fed Cir. 1992) .........................................................28, 29, 38

*Mentor Graphics Corp. v. Quickturn Design Sys.*,
    150 F.3d 1374 (Fed. Cir. 1998) ....................................................................23

*Ritchie v. Simpson*, 170 F.3d 1092 (Fed. Cir. 1999)................................................12

*Taylor v. Sturgell*, 553 U.S. 880 (2008)............................................................12, 22

*Shamrock Technologies, Inc. v. Medical Sterilization, Inc.*,
    903 F.2d 789 (Fed. Cir. 1990) .....................................................................22

*Urbain v. Knapp Bros. Mfg. Co.*, 217 F.2d 810 (6th Cir. 1954) ............................29

*United States v. UPS Customhouse Brokerage, Inc.*
    575 F.3d 1376 (Fed. Cir. 2009)......................................................18, 27, 34

*Weyerhaeuser Timber Co. v. Bostitch, Inc.*, 178 F. Supp. 757 (D.R.I. 1959) .........29


**Statutes and Rules**

37 C.F.R. § 42.1 ....................................................................13, 25, 26, 32, 33

37 C.F.R. § 42.2 ......................................................................................25, 26

37 C.F.R. § 42.6 ......................................................................................17, 32

37 C.F.R. § 42.8 ...............................................................................17, 32

37 C.F.R. § 42.22 ............................................................17, 26, 32, 32, 34

37 C.F.R. § 42.24 ............................................................................17, 32

37 C.F.R. § 42.51 ............................................................................10, 37

37 C.F.R. § 42.61 .................................................................................27

37 C.F.R. § 42.63 .............................................................................26, 27

37 C.F.R. § 42.73 ...................................................................................1

37 C.F.R. § 42.104 .................................... 15, 17, 26, 27, 32,33, 34

37. C.F.R § 42.107 ............................................................................1, 34

37 C.F.R. § 42.108 .................................................................................1


28 U.S.C. § 1295 ...................................................................................1

35 U.S.C. § 141 ......................................................................................1

35 U.S.C. § 6(c) .....................................................................................1

35 U.S.C. § 312(a) ...............................................................................31

35 U.S.C. § 314(a) ..................................... 14, 15, 21, 25, 30, 31, 39

35 U.S.C. § 318(a) .................................................................................1

35. U.S.C. § 319 ....................................................................................1

## **Other Authorities**

77 *Fed. Reg.* 48680, 48688 (Aug. 14, 2002) ....................................15, 17

77 *Fed Reg.* 48756, 48759 (Aug. 14, 2012) ...........................................22

# TABLE OF ABBREVIATIONS

***Parties***

| | |
|---|---|
| Achates | Patent Owner/Appellant Achates Reference Publishing, Inc. |
| Apple | Petitioner/Appellee Apple, Inc. |
| Board | Patent Trial and Appeal Board |
| QuickOffice | QuickOffice, Inc., a co-defendant of Apple in the related litigation |
| PTO | United States Patent and Trademark Office |

***Cites***

| | |
|---|---|
| § 312(a)(2) | 35 U.S.C. § 312(a)(2) |
| § 314(a) | 35 U.S.C. § 314(a) |
| § 315(b) | 35 U.S.C. § 315(b) |
| (A___) | Joint Appendix at page(s) _____ |

***Terms***

| | |
|---|---|
| '889 patent | U.S. Patent No. 5,892,889 – the subject of IPR2013-00081 and Federal Circuit No. 14-1788 |
| '403 patent | U.S. Patent No. 6,173,403 – the subject of IPR2013-00080 and Federal Circuit No. 14-1767 |
| AIA | Leahy-Smith America Invents Act |
| Board | The Patent Trial and Appeal Board |

| | |
|---|---|
| Decision to Institute | The Decision – Institution of Inter Partes Review (A284-A316) |
| Final Written Decision | The Final Written Decision (A1-A45) |
| IPR | inter partes review; IPR2013-00081 |
| sample SDK agreement | Apple Inc. iPhone SDK Agreement (A4605-4614) |
| Trial Practice and Procedure | 37 C.F.R. § 42.1 *et seq*. |
| Trial Practice Guide | Office Patent Trial Practice Guide, 77 *Fed. Reg*. 48756-48773 (Aug. 14, 2012). |

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5(a), appellant states:

(a) There have been no previous appeals in this proceeding.

(b) *Achates Reference Publishing, Inc. v. Apple, Inc.*, Fed. Cir. No. 2014-1767, is a companion case to this appeal.

(c) There are no cases known to counsel pending in this or any other court that will directly affect or be directly affected by this court's decision in this appeal, except to advise that the companion case identified above addresses the same or similar issues as this appeal. Appellant also advises that U.S. Patent No. 6,173,403 is the subject of Civil Action no. 2:11-cv-00294-(JRG-RSP) (E.D. Tex.), where Patent Owner and Petitioner are plaintiff and defendant, respectively.

## I.    STATEMENT OF JURISDICTION

The Board asserted jurisdiction under 35 U.S.C. § 314 and issued the

Decision Institution of Inter Partes Review (hereinafter the "Decision to Institute")

pursuant to  37 C.F.R. § 42.108.  (A284-285).  The Board asserted jurisdiction

under 35 U.S.C. § 6(c) and issued the Final Written Decision pursuant to 35 U.S.C.

§ 318(a) and 37 C.F.R. § 42.73.  (A2).  Achates, timely filed a notice of appeal on

July 30, 2014, which was received and docketed by the Court on July 31, 2014.

(Dkt. 1 at 2-7).  This Court has jurisdiction of this appeal pursuant to

28 U.S.C. § 1295(a)(4)(A) and 35 U.S.C. §§ 319 and 141(c).

## II.    STATEMENT OF THE ISSUES

1.    Whether the Board exceeded its authority by instituting an IPR

without substantial evidence to satisfy 35 U.S.C § 315(b)'s mandate that an IPR

"may not be instituted if the petition requesting the proceeding is filed more than 1

year after the date on which the petitioner, real party in interest, or privy of the

petitioner is served with a complaint alleging infringement of the patent."

2.    Whether the Board erroneously put the burden on Achates to prove

that Apple's co-defendants were real parties in interest or privies, thereby

1

misinterpreting § 315(b) and ignoring the PTO's regulations which put the burden on Apple to demonstrate that the Board has authority.

3.     Whether the Board acted arbitrarily and capriciously in denying Achates' discovery of Apple's agreements with its co-defendants and in relying on an unsigned sample agreement from Apple – rather than the actual agreements – to conclude that Apple's co-defendants were not real parties in interest or privies.

## III.   STATEMENT OF THE CASE

### A.   Statement of Facts

#### 1.   The '889 Patent

The Patent Office granted Jason DeMont United States Patent No. 5,982,889 on November 9, 1999, which issued from an application filed on April 30, 1997. (A46).  Mr. DeMont invented a technology directed to overcoming a common software distribution problem that existed at the time of the invention. (A4831). Publishers distributed software with security codes printed on the distribution medium or its packaging. (A4831). Once the purchaser had possession of the security code, the purchaser could install the software on multiple computers or share the code with his or her friends. (A4831). This resulted in widespread "casual copying" of software. (A4831).

The illustrative embodiment discloses distributing HTML "law libraries" on a physical medium. (A4831). The patent teaches using an "installer" to install the HTML files. (A4832). The invention uses cryptography, and notes that the encryption relies on then-existing cryptography techniques. (A4832). The illustrative system has no "external dependencies:" it does not require an independent license clearinghouse, nor does it require a public-key infrastructure. (A4832). The disclosed technology of the '889 patent needs no specialized hardware or software that a user must install and configure beforehand. (A4832). It relies on the software installer and the publisher. (A4832).

Figure 1 depicts a flowchart of the exchanges between a publisher and end-user for accomplishing software installation according to the '889 patent:

*FIG. 1*



4

The publisher builds the information products, prepares them for distribution, and then distributes the products directly to end-users, without the need for an intervening distribution system. (A47). The end-user computer runs a program called an installer, which determines whether the end-user may install the product. (A47). If not, the end-user obtains authorization from the publisher, installs the information product and memorializes the authorization in a token. (A47).

Figure 4 illustrates an example of how the system obtains authorization from the publisher:



FIG. 4

(A50).

The end-user system generates an encryption key, R, and transmits it to the publisher.  (A50).  In the Figure 4 example, the publisher creates an encrypted launch code using R as the key to encrypt an authentication code, an indicium of the end-user's name, the names of the authorized products and expiration dates.  (A50).  The publisher sends the encrypted launch code to the end-user, where the end-user decrypts the launch code using R as the key.  (A50).  Decrypting the launch code recovers the authentication code.  (A50).  The installer on the end-user's computer determines whether the authentication code received in the launch code (the "candidate authentication code") is acceptable and if so installs the information product.  (A50).  If the candidate authentication code is unacceptable, the information products are not installed.  (A50).  The '889 patent states that "[t]he purpose of generating a new serial number, R, each time the installer requires a launch code is to prevent the end-user from using a single launch code to install the information products on multiple computers."  (A56 – Col. 11, line 65 to Col. 12, line 2).

### 2.    Infringement Litigation Over The '889 Patent

Achates asserted the '889 patent in Civil Action no. 2:11-cv-00294-JRG-RSP (E.D. Tex.) against multiple software publishers in June of 2011.  (A4563).  The Complaint alleged infringement of the '889 patent relating to defendants' use

of activation technology in software distribution. (A4563-4569). Achates served all of the defendants as of July 14, 2011. (A4574-4576). At least three of the defendants, Electronic Arts, Inc., Symantec Corporation, and QuickOffice, Inc., distributed their software via Apple's App Store. (A4633-4643).

Achates filed an Amended Complaint on June 20, 2012, additionally naming Apple as a defendant. (A2254). In the Amended Complaint, Achates alleged that Apple infringed by distributing "apps via the Mac App Store for desktop and laptop computers, and the App Store for mobile devices such as the iPhone and iPad." (A2262). Achates also alleged that Apple caused others to infringe when distributing apps over either of Apple's App Stores and that Apple and QuickOffice both infringed when distributing QuickOffice apps on the App Store:

> 52. Apple also causes third party developers to use such technology in distributing and installing third party apps via the Mac App Store and the App Store. Without limitation, defendants QuickOffice and Apple distributed and continue to distribute products such as QuickOffice Pro via at least the App Store. Distribution of such products constitutes infringement of at least claim one of the '403 patent and claim one of the '889 patent. Such products infringe the '889 patent and the '403 patent by without limitation employing Apple's software distribution technology.

(A2262).

7

### 3.    Apple's Relationships With Its Co-defendants

Although the Board denied discovery into the details of Apple's relationship with its co-defendants, Apple does admit that it had at least one agreement with one of its co-defendants – QuickOffice – at the time of the Petition:

> *Achates 129.   QuickOffice has entered into at least one form of an agreement related to app development with Petitioner prior to the Petition being filed.*

**Response: Admitted.**

(A467; A273-280; A343-344; A572-574).   Apple also admits that the undisclosed Apple-QuickOffice agreement (or agreements) relates to QuickOffice "app" development and that Apple and QuickOffice entered their agreement before Apple petitioned for inter partes review.   (A467).

A sample agreement that Apple uses with its "app" developers is publicly available and is entitled "Apple Inc. iPhone SDK Agreement" (hereinafter the "sample SDK agreement").   (A4605-4614).   The sample SDK agreement provides for defense and indemnity obligations related to patent infringement claims by third parties:

**6. Indemnification**

> To the extent permitted by law, You agree to indemnify, defend and
> hold harmless Apple, its directors, officers, employees, independent
> contractors and agents (each an "Apple Indemnified Party") from any
> and all claims, losses, liabilities, damages, expenses and costs
> (including without limitation attorneys fees and court costs)
> (collectively "Losses") incurred by an Apple Indemnified Party as a
> result of Your breach of this Agreement, a breach of any certification,
> covenant, representation or warranty made by You in this Agreement,
> any claims that Your Applications violate or infringe any third party
> intellectual property or proprietary rights, or otherwise related to or
> arising from Your use of the SDK, Your Application(s) or Your
> development of Applications.

(A4611).  The sample SDK agreement also limited Apple's counterparty from

entering into settlements without Apple's consent:

> In no event may You enter into any settlement or like agreement with
> a third party that affects Apple's rights or binds Apple in any way,
> without the prior written consent of Apple.

(A4611).

**B.     Relevant Procedural History of the Inter Partes Review**

The Petition for inter partes review of the '889 patent was filed on

December 14, 2012, and it identified Apple as the only "real party of interest."

(A137; A71).  The Petition discloses that the '889 patent was the subject of a

patent infringement action, and that Apple was named a defendant on June 20,

2012.  (A71-72).  Apple also asserted – but without evidence – that neither Apple

nor any party in privity with Apple had been served with a complaint alleging

9

infringement of the '889 patent more than one year before it filed the Petition. (A71). In addition, the Petition failed to disclose when the infringement action was commenced against Apple's co-defendants; it failed to identify Apple's co-defendants, and it failed to state when its co-defendants were served. (A71-72).

Prior to the filing of the Patent Owner's Preliminary Response, the Board conducted a conference call to hear Achates' request to file a motion for additional discovery pursuant to 37 C.F.R. § 42.51(b)(2). (A140-144). Achates sought discovery of any agreements, including joint defense agreements, between Apple and its co-defendants in the infringement litigation. (A141). Achates advised the Board that Apple's co-defendants had been served more than 1 year before Apple filed its Petition. (A141). Achates also advised the Board of the indemnity provision in the sample SDK agreement. (A141). Apple again asserted that it was the only real party in interest. (A141).

The Board authorized the motion, but then denied Achates any discovery. (A141; A273-280). After noting that the motion raised the prospect that the inter partes review might be proscribed by § 315(b), the Board reasoned that granting discovery of Apple's agreements with its co-defendants would not be in the interests of justice. (A275; A279).

10

The Board, however, did acknowledge that the question of who is a real party in interest and privy is "highly fact-dependent," that "a number of factors may be relevant to the analysis," and that whether the party could exercise control over a party's participation in the proceeding is one of the factors. (A276-277).

Nevertheless, the Board denied discovery because, among other reasons, "Achates provides no proof that any of Apple's co-defendants in the related litigation have signed the SDK Agreement." (A277). The Board also stated that the sample SDK agreement did not give the developer the right to intervene and that indemnification was not one of the substantive legal relationships that could support a finding of privy or real party in interest. (A277-278). The Board called Achates' request for discovery "mere allegation and speculation," although Apple did not dispute the existence of the agreements. (A279; A161).

The Board issued the Decision to Institute on June 3, 2013 after receiving Achates' Preliminary Response. (A284; A170). In its Preliminary Response, Achates requested that the Board deny the Petition "because the Petition fails to meet the requirements of 35 U.S.C. §315(b)." (A175).  Although the Board again acknowledged the highly fact-dependent nature of the real party in interest and privy questions, the Board viewed § 315(b) as putting the burden on Achates to prove that Apple's co-defendants were real parties in interest or privies:

11

> We are not persuaded that any of the co-defendants in the related litigation are real-parties-in-interest or privies of Petitioner and, therefore, do not deny the Petition for failure to comply with the statutory requirements for instituting an *inter partes* review.

(A296; A301).  The Board reasoned that the absence of evidence of real party in interest or privity supported a determination that its authority was not proscribed by § 315(b). (A298).

Achates filed its Patent Owner Response on September 17, 2013. (A348). The Patent Owner Response again requested dismissal of the Petition based on the lack of the Board's statutory authority under § 315(b).  (A399-406).  Achates noted that Apple did not dispute the existence of an agreement with QuickOffice or the inclusion of an indemnity provision in that agreement, and contended that the Board improperly denied discovery of the actual agreements. (A400-401).  Achates further contended that the infringement action against Apple fell within the indemnity provisions of the sample SDK agreement and that the factors articulated in *Taylor v Sturgell*, 533 U.S. 880, 894 (2008) compelled a conclusion of privy or real party in interest. (A401-402).  Achates directly opposed the Board's interpretation that it could properly, under § 315(b), put the burden on Achates to demonstrate the Board's lack of authority:

> Standing before an administrative agency depends on the language of the statute and regulations that confer standing before that agency. *Ritchie v. Simpson*, 170 F.3d 1092, 1094-95 (Fed. Cir. 1999). The

12

> burden of proof of administrative standing does not shift and remains
> on the party instituting the action before the agency. Rule 42.1(d).

(A405).

In addition, the Patent Owner's Response contained Proposed Statements of

Material Facts, and, in response, Apple admitted that it had an agreement with

QuickOffice. (A411-412; A467). One of the proposed statements of material fact

regarded whether the agreement between Apple and QuickOffice included an

indemnity provision related to intellectual property infringement. (A412). Apple

refused to respond because answering the question would provide Achates with the

discovery that the Board denied:

> *Achates 130. An agreement related to app development entered
> into between QuickOffice and Petitioner prior to the Petition being
> filed includes an indemnification provision of Petitioner by
> QuickOffice for intellectual property infringement.*
>
> **Response: Neither admitted nor denied. Patent Owner
> presents no evidence to support its statement, and answering the
> question would provide Patent Owner with discovery that the
> Board expressly refused to authorize.**

(A467).

The Board issued a Final Written Decision in which it asserted statutory

authority under § 315(b) for the same reasons that the Board denied discovery of

the actual agreements. (A1; A8). In the Final Written Decision, the Board noted

that "Apple acknowledges that it entered into 'at least one form of an agreement

13

related to app[lication] development with [QuickOffice],' but does not admit that

the agreement included the indemnification provision cited by Achates." (A1).

The Board again asserted that Achates presented no evidence demonstrating the

terms of the relationship between QuickOffice and Apple, while foot-noting its

refusal to grant Achates discovery of the Apple-QuickOffice Agreement:

> [3] Also, in an earlier Order, we denied Achates's request
> for additional discovery on the Section 315(b) issue. Paper
> 17.

(A9).

Achates, timely filed a Notice of Appeal to address whether the Board

exceeded its authority under § 315(b). (Dkt. 1 at 2-7).


## IV.    SUMMARY OF THE ARGUMENT

Achates requests that the Court vacate the Board's Final Written Decision

and mandate that the Petition be dismissed for three reasons.

1.    The first reason is that the Board's authority to institute the IPR was

proscribed by 35 U.S.C. § 315(b), and, therefore, the Board's issuance of the Final

Written Decision was ultra vires.  There are a number of statutory provisions that

must be satisfied in order for the Board to have the authority to conduct an IPR.

Two of these provisions are 35 U.S.C. §§ 314(a) and 315(b).

Section 315(b) proscribes the Board's authority to institute an inter partes review if the petition is filed more than 1 year after the date on which the petitioner, a real party in interest, or a privy of the petitioner is served with a complaint alleging infringement of the patent.

Apple filed its petition more than 1 year after the date on which Apple's co-defendants in the related litigation were served with a complaint alleging infringement of the '889 patent. (A137-139; A4574-4576). Therefore, if any of the co-defendants were real parties in interest or privies, then the Board's authority was proscribed by § 315(b).

The Board stated that whether any of Apple's co-defendants is a real party in interest or privy is a "highly fact-dependent question," and the Court reviews fact findings for substantial evidence. (A296); *In re Gartside*, 203 F.3d 1305 (Fed. Cir. 2000). The statute and the PTO regulations put the burden on Apple to demonstrate the Board's authority in the petition. *See* 37 C.F.R. § 42.104(a) and 77 *Fed. Reg.* 48680, 48688 (Aug. 14, 2002).

Although Apple submitted evidence to support a finding by the Board that it had the authority to institute an IPR under 35 U.S.C. § 314(a), Apple did not submit evidence to support a finding by the Board that it had authority under § 315(b). (A752-A869). Nevertheless, the Board ignored the lack of Apple's

15

evidence and determined that Apple's co-defendants were not real parties in interest or privies and that its authority was not proscribed by § 315(b). (A295-301). Because the Board's finding is not supported by substantial evidence, the Board's institution of the IPR and issuance of the Final Written Decision was ultra vires.

2.    The second reason is that the Board erroneously proceeded as if § 315(b) were an affirmative defense; it ignored Apple's lack of evidence on the issue and put the burden on Achates to prove that Apple's co-defendants were real parties in interest or privies. This is why the Board felt justified in making its determination – without substantial evidence – that § 315(b) did not proscribe its authority.

Section 315(b) proscribes the Board's authority in some factual circumstances, and this proscription exists irrespective of whether Achates raises the issue or offers evidence to prove it. No part of § 315(b) requires Achates to prove that Apple's co-defendants were real parties in interest or privies, and the Board erred when it required these proofs from Achates.

Furthermore, the Board misapplied the Patent Office regulations governing contested proceedings, which put the burden of proving the Board's authority on the petitioner. The PTO's regulations for inter partes review specify that the

16

petitioner – and not the patent owner – bears the burden of demonstrating the

Board's authority.  37 C.F.R. § 42.104.

Although the Patent Office regulations miscast the issue of whether the

Board's authority is proscribed by § 315(b) as a question of the petitioner's

"standing," § 42.104 provides that "[i]n addition to the requirements of §§ 42.6,

42.8, 42.22, and 42.24, the petition must set forth" that the petitioner is not barred

or estopped from an inter partes review**:**

> (a) *Grounds for standing.* The petitioner must certify that
> the patent for which review is sought is available for
> *inter partes* review and that the petitioner is not barred or
> estopped from requesting an *inter partes* review
> challenging the patent claims on the grounds identified in
> the petition.

The Patent Office explains that § 42.104(a) requires the petitioner to demonstrate

the Board's authority, and that the certification is the minimum required by

§ 42.104(a):

> ... a petition must demonstrate that the petitioner has
> standing. To establish standing, a petitioner, at a
> minimum, must certify that … the petitioner is not barred
> or estopped from requesting [the IPR]. This requirement
> is to ensure that a party has standing to file the *inter
> partes* review and would help prevent spuriously-
> instituted *inter partes* reviews. Facially improper
> standing will be a basis for denying the petition without
> proceeding to the merits of the petition.

77 *Fed. Reg.* 48680, 48688 (Aug. 14, 2002).

17

The Board's actions in the case are contrary to the PTO's regulations and cannot be sustained. *See Align Tech., Inc. v. ITC*, 2014 WL 3537066 at *4, 111 USPQ.2d 1855, 1860 (Fed. Cir. 2014) (setting aside decision "[b]ecause the Commission circumvented its own rules."); *United States v. UPS Customhouse Brokerage, Inc.* 575 F.3d 1376, 1382 (Fed. Cir. 2009) ("An agency must follow its own regulations.")

By erroneously putting the burden on Achates to prove that the Board's authority is proscribed by § 315(b), the Board's Final Written Decision should be vacated and the Petition dismissed.

3.    The third reason is that Board arbitrarily and capriciously denied Achates discovery of Apple's agreements with its co-defendants but relied instead on an unsigned sample SDK agreement that Apple uses with its developers – rather than the actual agreements themselves – to support its authority under § 315(b).

Despite putting the burden on Achates to prove Apple's relationships with its co-defendants, the Board denied Achates discovery of Apple's relationships with its co-defendants. (A273-280; A343-344; A572-574). Achates submitted to the Board a sample SDK agreement that Apple enters into with its "app" developers. (A4605-4614). The sample SDK agreement contains indemnity, defense, and hold harmless provisions related to intellectual property infringement.

18

(A4611). Three of Apple's co-defendants – Electronic Arts, QuickOffice, and Symantec – are "app" developers. (4633-4643). Therefore, the sample SDK agreement is evidence that Apple had agreements with those co-defendants and that the agreements had indemnity, defense, and hold harmless provisions related to intellectual property infringement. Based on this evidence, Achates requested discovery of the actual agreements between Apple and the three co-defendants. (A145-155).

In response, the Board denied Achates discovery because – among other reasons – the Board said that Achates did not prove that Apple and its co-defendants had signed the sample SDK agreement. (A277).

After the IPR was instituted and Apple admitted that an agreement did, in fact, exist, the Board again denied discovery of the agreement. (A467; A572-574).

Despite having rejected the evidentiary value of the sample SDK agreement for the purpose of discovery, the Board – in another lapse of reason – relied on the sample SDK agreement for the purpose of justifying its fact determinations. (A295-301; A8-12). The Board's reliance on the unsigned sample SDK agreement shows the importance of having the actual Apple agreements to make supportable fact determinations. But the Board refused to review them.

The Board's errors leave this Court without any record on which to review

whether Apple's co-defendants were real parties in interest or privies, and, therefore, without evidence to conclude whether the Board acted within its statutory authority under § 315(b).  For this reason, the Court should vacate the Final Written Decision and mandate dismissal of the Petition.

## V.    ARGUMENT

### A.    Standard of Review

The Court reviews the Board's legal conclusion of its authority under 35 U.S.C. § 315(b) *de novo. Belkin Int'l, Inc. v. Kappos*, 696 F.3d 1379, 1381 (Fed. Cir. 2012). *See, In re Gartside*, 203 F.3d 1305, 1315 (Fed. Cir. 2000) (whether the Board possessed jurisdiction to continue an interference proceeding is a question of law).  The Board's factual findings that Apple's co-defendants are not real parties in interest or privies of Apple are reviewed for substantial evidence. *Id*. This Court has explained that substantial evidence is evidence that a reasonable mind might consider sufficient to support the finding of fact. *In re Antor Media Corp.,* 689 F.3d 1282, 1287 (Fed. Cir. 2012), (*citing Consolidated Edison Co. v NLRB, 3*05 U.S. (1938)).  Substantial evidence review involves examination of the record as a whole, taking into account evidence that both justifies and detracts from an agency's decision. *In re Gartside*, 203 F.3d 1305, 1312 (Fed. Cir. 2000).

**B.    The Board's Authority to Institute the IPR Was Proscribed by Statute; Therefore, the Board's Issuance of the Final Written Decision Was Ultra Vires**

**1.    Section 315(b) Limits the Board's Authority to Conduct an Inter Partes Review**

The Board stated that "[t]he standard for instituting an inter partes review is set forth in 35 U.S.C. § 314(a)" and proceeded as if § 314(a) were the only threshold for instituting an IPR.  (A285).  It is not.

For example, 35 U.S.C. § 315(b) states:

> (b) Patent Owner's Action.— An inter partes review may not be instituted if the petition requesting the proceeding is filed more than 1 year after the date on which the petitioner, real party in interest, or privy of the petitioner is served with a complaint alleging infringement of the patent.

This proscription on the Board's authority is not discretionary.  If § 315(b) applies, then the Board lacks authority, the issuance of Final Written Decision was ultra vires and the Petition must be dismissed.

According to the Patent Office's Trial Practice Guide these limits to the Board's authority protect patent owners from successive litigation and "protect the integrity of both the USPTO and Federal Courts:"

> The core functions of the ''real party-in- interest'' and ''privies'' requirement to assist members of the Board in identifying potential conflicts, and to assure proper application of the statutory estoppel provisions. The latter, in turn, seeks to protect patent owners from harassment via successive petitions by the same or related parties, to prevent parties from having a ''second bite at the apple,'' and to

21

protect the integrity of both the USPTO and Federal Courts by assuring that all issues are promptly raised and vetted.

*77 Fed. Reg*. 48756, 48759 (Aug. 14, 2012).

> **2.    Whether Apple's Co-defendants Were Real Parties In Interest or Privies Presented a "Highly Fact-Dependent Question"**

Apple filed its petition more than one year after its co-defendants had been served with a complaint alleging infringement of the '889 patent.  (A137-139; A4574-4576).  The Board was informed that it was likely that Apple and several of its co-defendants had entered into agreements concerning the subject matter of the infringement action.  (A145-152; A178-189).

The Patent Office considers the determination of whether a non-party is a real parties in interest or privy to be dependent on the specific facts in the case. *Trial Practice Guide, 77 Fed. Reg*. 48756 at 48759, citing *Taylor v. Sturgell*, 553 U.S. 880 (2008).  This Court, in other contexts, has instructed that resolving the privity question requires that all of the facts underpinning the relationship between the parties be examined:

> Whether two parties are in privity depends on the nature of their relationship in light of the alleged infringement. "The closer that relationship, the more the equities will favor applying the doctrine" of assignor estoppel. *Shamrock Techs.*, 903 F.2d at 793[*Shamrock Technologies, Inc. v. Medical Sterilization, Inc.*, 903 F.2d 789 (Fed. Cir. 1990)]. Assessing a relationship for privity involves evaluation of all direct and indirect contacts. *See Intel, 946 F.2d at 838.*

*Mentor Graphics Corp. v. Quickturn Design Sys.*, 150 F.3d 1374, 1379 (Fed. Cir. 1998).

The Board noted this guidance in the Decision to Institute and acknowledged that the determination of whether Apple's co-defendants were real parties in interest or privies presented a "highly fact-dependent question:"

> Whether a non-party is a "real party-in-interest" or "privy" for purposes of an *inter partes* review proceeding is a "highly fact-dependent question" that takes into account how courts generally have used the terms to "describe relationships and considerations sufficient to justify applying conventional principles of estoppel and preclusion."

(A296).

But the Board asserted authority to consider the Petition and institute a trial for the IPR without evaluating all – or even any – of the direct and indirect contacts among Apple and its co-defendants. (A295-301).

Although Apple failed to provide the Board with evidence regarding whether its co-defendants were real parties in interest or privies, Achates alerted the Board to the existence of the § 315(b) issues, and provided the Board with a sample SDK agreement that demonstrated the likelihood that an agreement existed between Apple and at least three of its co-defendants. (A145-152; A4605).

The sample SDK agreement included an intellectual property indemnification provision and a defense and hold harmless provision. (A4611).

23

Achates requested discovery of agreements between Apple and its co-defendants,

which, given the authority issues at stake and the fact-dependent nature of privy

and real party in interest issues, the Board should have welcomed. (A145-152).

Instead, the Board denied discovery and determined the "highly fact-

dependent question" of whether Apple's co-defendants were not real parties in

interest or privies without evidence to support its decision. (A273-280; A295-

301).

### 3. The Board's Determination That Apple's Co-defendants Were Not Real Parties In Interest Or Privies Lacks Substantial Evidence

This Court reviews the Board's determination of fact findings for substantial

evidence. *In re Gartside*, 203 F.3d 1305 (Fed. Cir. 2000). While *In re Gartside* did

not consider an inter partes review proceeding, the Court's analysis applies equally

here:

> The record before us on appeal thus dictates the parameters of our
> review. We cannot look elsewhere to find justification for the Board's
> decision. Furthermore, the record reflects the results of a proceeding
> in the PTO during which the applicant has been afforded an
> opportunity to bring forth the facts thought necessary to support his or
> her position.

*Id*. at 1314.

In situations where the reviewing court "must confine its review of agency

fact finding to the record produced by the agency proceeding," this Court has

24

determined that the substantial evidence review applies.  *Id*. at 1315.  Because a decision to institute an IPR is reviewed on a closed record, the substantial evidence standard of review likewise applies.  *Id*. at 1315.

The record here lacks substantial evidence to demonstrate that none of Apple's co-defendants are real parties in interest or privies of Apple.  In reviewing a record for substantial evidence to support a factual finding, the Court considers whether a reasonable mind would consider the evidence adequate to support a conclusion.  *Dickinson v. Zurko*, 527 U.S. 150, 162 (1999) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Apple submitted evidence in its petition to support a determination by the Board that it had authority under 35 U.S.C. § 314(a), but did not submit evidence to demonstrate that its co-defendants were not real parties in interest or privies. (A752).  It should have.  In accordance with the PTO's Regulations governing "Trial Practice and Procedure."  37 C.F.R. § 42.1 *et seq*. Apple had the burden to demonstrate in its petition that the Board had authority to institute and conduct the IPR.

According to the regulations, Apple's filing of an inter partes review petition began a "Preliminary Proceeding," which continued until the Board issued the written decision concerning whether to institute the trial.  37 C.F.R. § 42.2. The

25

regulations establish preponderance of the evidence as the default evidentiary standard for the Preliminary Proceeding, which would have applied to issues of real party in interest and privity. *See* 37 C.F.R. § 42.1. The regulations required Apple to include in its petition "[a] full statement of the reasons for the relief requested, including a detailed explanation of the significance of the evidence including material facts, and the governing law, rules, and precedent." 37 C.F.R. § 42.22(a)(2). These regulations required Apple to submit affidavits and documents as evidence directed to real party in interest and privy, and to identify all its evidence on its Exhibit List. 37 C.F.R. § 42.63(a-e). Apple submitted no such evidence.

Instead, Apple simply stated that it was not barred or estopped from seeking an inter partes review:

> Petitioner certifies it is not barred or estopped from requesting *inter partes* review of U.S. Patent No. 5,982,889 (the '889 patent) (Ex. 1039). Neither Petitioner, nor any party in privity with Petitioner: (i) has filed a civil action challenging the validity of any claim of the '889 patent; or (ii) has been served a complaint alleging infringement of the '889 patent more than a year prior to the present date. Also, the '889 patent has not been the subject of a prior *inter partes* review or a finally concluded district court litigation involving Petitioner.

(A71); *see* 37 C.F.R. § 42.104. Apple elected to proceed without an evidentiary submission despite the Patent Office's guidance that real party in interest and privy present highly fact-dependent questions.

26

Neither Apple nor the Board contended that Apple's statement under 37 C.F.R. § 42.104(a) constituted an evidentiary showing. Likewise, under the Trial Practice and Procedure regulations, this statement is not evidence in the proceeding. The subpart provides that "[e]vidence consists of affidavits, transcripts of depositions, documents and things" "filed in the form of an exhibit." 37 C.F.R. § 42.63(a). The regulations do not define statements in the petition as evidence. And according to 37 C.F.R. § 42.61(a), "Evidence that is not taken, sought, or filed in accordance with this subpart is not admissible." Nowhere do the governing regulations contemplate bare assertions as evidentiary in the "proceedings," and neither Apple nor the Board relied on Apple's statement as evidence. The Board's actions in the case are contrary to the PTO's regulations and cannot be sustained. *See Align Tech., Inc. v. ITC*, 2014 WL 3537066 at *4, 111 USPQ.2d 1855, 1860 (Fed. Cir. 2014) (setting aside decision "[b]ecause the Commission circumvented its own rules."); *United States v. UPS Customhouse Brokerage, Inc.* 575 F.3d 1376, 1382 (Fed. Cir. 2009) ("An agency must follow its own regulations.")

A reasonable mind would not have considered the evidence before the Board sufficient to support the Board's conclusion of a lack of privity or real party in interest. To determine the extent of Apple's relationships with its co-defendants

27

before instituting the IPR, the Board only considered the sample SDK agreement that Achates submitted to support its request for discovery of Apple's actual agreements with its co-defendants. (A295-301). As the Board noted, the sample SDK agreement was not specific to Apple and any co-defendant. (A277). The sample SDK agreement, however, would have demonstrated to a reasonable mind that there was a likelihood that QuickOffice and other Apple co-defendants had a substantive legal relationship with Apple relating to their activities on the Apple App Stores and that there was a likelihood that those legal relationships included defense and indemnity obligations. But instead of examining the full extent of Apple's substantive legal relationships with its co-defendants, the Board looked only at the sample SDK agreement. No reasonable mind, however, would have considered the sample SDK agreement sufficient to determine the full extent of Apple's relationships with its co-defendants or that none of Apple's co-defendants were privies or real parties in interest.

This Court's decision in *Intel Corp. v. United States Int'l Trade Commiss'n,* 946 F.2d 821, 836-839 (Fed. Cir. 1991) vacated a finding of lack of privy because the Commission's unduly restrictive test led it to ignore important facts and evidence. In that case, the Commission's finding that no privy existed between a patent assignor and a respondent in an ITC investigation failed to adequately

28

consider all contacts – direct and indirect – between the assignor and the respondent. The Court, in concluding that privity existed, considered at length the indirect contacts between the respondent and the assignor. *Intel Corp.,* 946 F.2d at 838-840.  For example, the court considered the role of the assignor in creating a joint venture with respondent, the assignor's indemnity agreement with the respondent, the assignor's role with the respondent's joint venture partner, the financial relationships between the joint venture partners, and the assignor's brother's indemnity agreement with the respondent.  *Id*.

Like the Commission in the *Intel Corp.* case, the Board here failed to consider sufficient evidence relevant to the fact questions of privy and real party in interest. This Court considers indemnity an important factor in determining privy:

> Further, the indemnity agreement between George Perlegos and GI/M created a significant relationship between them. Such an indemnification agreement, in other cases, has alone been enough to find privity. *See Urbain v Knapp Bros. Mfg. Co.,* 217 F.2d 810 (6th Cir. 1954); *Weyerhaeuser Timber Co. v Bostitch, Inc.,* 178 F.Supp. 757, 760-61 (D.R.I. 1959). That George Perlegos would take on such a liability demonstrates that he had considerable interest in GI/M's contribution to the joint venture and its production of EPROMs.

*Id*. at 839. The Board here dismissed out of hand the indemnity provision in the sample SDK agreement and even refused to take into the record Apple's actual agreements with its co-defendants, including the Apple-QuickOffice agreement.

The complete lack of evidence on these highly fact-dependent questions requires this Court to vacate the Final Decision.  In every case, the record must contain substantial evidence to support the Board's exercise of authority under § 315(b).  Apple's petition submitted only lawyer statement, unaccompanied by any evidence concerning its relationships with co-defendants.  A finding by the Board that none of the co-defendants was a privy or real party in interest is unsupported by substantial evidence, and this Court should vacate the Final Decision and mandate dismissal of the petition.

### C.    The Board Misinterpreted Section § 315(b) and Patent Office Regulations, Erroneously Requiring Achates to Prove that the Board Lacked Authority

The Court should vacate the Final Written Decision because the Board misplaced the burden on Achates to prove Apple's privity with a co-defendant or to prove there were other, unidentified real parties in interest.  The Board's error arose from misinterpreting the statute and from misapplying the PTO's regulations.  This Court reviews the Board's interpretation of the clear and unambiguous statutory language *de novo*.  *Belkin Int'l, Inc. v. Kappos*, 696 F.3d 1379, 1381 (Fed. Cir. 2012).  The Board erred when it instituted the IPR without authority.

The Board misread the requirements of §§ 314 and 315 to conclude that § 314(a) is the only requirement that must be satisfied before the Board has the

authority to institute an IPR. (A285)("The standard for instituting an *inter partes* review is set forth in 35 U.S.C. § 314(a)."). This is incorrect. Section 315(b) also states a requirement that must be satisfied before the Board has authority to institute an IPR. Based on its incorrect reading of the applicable statutory requirement for instituting a trial, the Board failed to analyze Apple's petition for evidence concerning § 315(b).

Instead, the Board erroneously put the burden on Achates to prove Apple's relationships with its co-defendants. The Board states that Achates "provides no proof" that "any of the co-defendants in the related litigation ever signed the SDK agreement." (A298). Later, the Board stated that Achates failed to "persuade" the Board on the relevant issues. (A301).

By requiring Achates to prove Apple's relationships with its co-defendants, the Board misapplied the statutory language of § 315(b), and the Patent Office's regulations for inter partes reviews. Section 315(b) proscribes the Board's authority, and this proscription exists irrespective of whether Achates raises or offers evidence on real party in interest or privy. Read together with § 312(a)(2) – which requires the petition to identify the real party in interest – the statutory scheme recognizes that the petitioner must present the evidence demonstrating the Board's authority. No part of § 315(b) required Achates to prove Apple's

31

relationships with its co-defendants, and the Board erred when it required these proofs from Achates.

Furthermore, the Board misapplied the Patent Office regulations governing contested proceedings, which put the burden of proving the Board's authority on the petitioner.  The regulations require the petition to include the arguments and evidence supporting the requested relief.  *See*  37 C.F.R. § 42.22(a).  The regulations also define the default evidentiary standard on questions-of-fact to be preponderance of the evidence.  37 C.F.R § 42.1(d).  When applied to the real party in interest and privy fact questions arising under § 315(b), the regulations impose on petitioner the burden of producing evidence in the petition to support a determination by the Board that its authority is not proscribed by § 315(b).

The Patent Office also adopted regulations specifically applicable to inter partes reviews, which specify that the petitioner – and not the patent owner – bears the burden on demonstrating the Board's authority.  37 C.F.R. § 42.104.  Although the Patent Office regulations miscast the issue of whether the Board's authority is proscribed by § 315(b) as a question of the petitioner's "standing," § 42.104 provides that "[i]n addition to the requirements of §§ 42.6, 42.8, 42.22, and 42.24, the petition must set forth" that the petitioner is not barred or estopped from an inter partes review**:**

32

> (a) *Grounds for standing*. The petitioner must certify that the patent for which review is sought is available for *inter partes* review and that the petitioner is not barred or estopped from requesting an *inter partes* review challenging the patent claims on the grounds identified in the petition.

The Patent Office explains that § 42.104(a) requires the petitioner to demonstrate the Board's authority, and that the certification is the minimum required by § 42.104(a):

> ... a petition must demonstrate that the petitioner has standing. To establish standing, a petitioner, at a minimum, must certify that … the petitioner is not barred or estopped from requesting [the IPR]. This requirement is to ensure that a party has standing to file the *inter partes* review and would help prevent spuriously-instituted *inter partes* reviews. Facially improper standing will be a basis for denying the petition without proceeding to the merits of the petition.

77 *Fed. Reg.* 48680, 48688 (Aug. 14, 2002).

This requirement does not substitute for the supporting evidence required by § 42.22 or diminish the default evidentiary requirements of § 42.1. By its express language, § 42.104 places an additional requirement on the petitioner of an inter partes review.

The Board's actions in the case are contrary to the PTO's regulations and cannot be sustained. *See Align Tech., Inc. v. ITC*, 2014 WL 3537066 at *4, 111 USPQ.2d 1855, 1860 (Fed. Cir. 2014) (setting aside decision "[b]ecause the

33

Commission circumvented its own rules."); *United States v. UPS Customhouse Brokerage, Inc.* 575 F.3d 1376, 1382 (Fed. Cir. 2009) ("An agency must follow its own regulations.")

Neither statutory provisions nor Patent Office regulations require a patent owner to respond to the petition prior to institution of an IPR. 37 C.F.R. § 42.107(a). But if a patent owner does respond, like Achates did in this matter, the regulations limit the response to setting forth the reasons why no *inter partes* review should be instituted under § 314 and prohibit the patent owner from offering testimonial evidence. 37 C.F.R. § 42.107(a, c). In the context of the limited response a patent owner may make and the limited evidence the patent owner may present, the regulations placed no burden on Achates to prove Apple's co-defendants were real parties in interest or privies at the time the Board was required to determine its authority under 35 U.S.C. § 315(b).

The Court should, therefore, vacate the Final Written Decision, because the Board misconstrued 35 U.S.C. § 315(b) and its own regulations by placing the § 315(b) burden of proof on Achates – both before and after Achates made the Board aware of Apple's likely contractual relationships with its co-defendants. According to the Board's reading of § 315(b) – which reading requires patent owners to prove privity and real party interest without access to discovery or the

34

ability to submit testimonial evidence – the Board assumes near unfettered authority to institute trials without regard to the highly fact-dependent questions of privity and real party in interest.  Furthermore, the petitioner is most likely to be in exclusive possession of the facts that would prove or disprove privity and real party in interest.

Without justification, the Board treats the requirements of § 315(b) as an affirmative defense instead of a statutory requirement for authority.  But the Board's reading is wrong.  Section 315(b) and the Patent Office regulations put an affirmative obligation on the petitioner to submit the appropriate evidence.

### D. The Board Arbitrarily and Capriciously Denied Achates Discovery of Apple's Executed Agreements and Relied On a Non-Evidentiary Sample SDK Agreement To Determine Its Authority Under Section 315(b)

The Court should vacate the Final Written Decision because the Board based its decision on a sample SDK agreement it considered non-evidentiary, while arbitrarily denying Achates discovery of specific executed agreements relevant to the real party in interest and privy questions.  While the Court reviews *de novo* the Board's legal conclusion of authority under § 315(b), the Court also reviews whether the Board acted arbitrarily and capriciously or without observance of procedure required by law in reaching its decision.  5 U.S.C. § 706(2). The Board acted arbitrarily and capriciously both when it denied Achates discovery on the

35

issue of the Board's authority, and then when it reasoned its conclusion from the

sample SDK agreement instead of the actual agreements between Apple and its co-

defendants.

### 1.    The Board Arbitrarily and Capriciously Denied Discovery

During the Preliminary Proceedings, Achates showed that agreements likely

existed between Apple and its co-defendants.  Achates submitted with its

Preliminary Response evidence that co-defendants sold apps on Apple's App Store.

(A4633-4643).  Achates also submitted a sample SDK agreement from Apple,

which included indemnity, defense, and hold harmless provisions related to patent

infringement.  (A4611).

The sample SDK agreement indicated that the co-defendants selling apps on

Apple's App Store likely entered a substantive legal relationship with Apple

concerning accusations of infringement of the '889 patent including provisions

controlling duties to defend and indemnify.  Achates asked the Board to allow

discovery of the actual legal relationships memorialized in all of Apple's

agreements with its co-defendants.  (A155).

In petitioning for the inter partes review, Apple put its legal relationships at

issue.  It did so implicitly by requesting that the Board exercise authority under

§ 315(b) and explicitly by asserting – without any evidence – (i) that Apple was the

only real party in interest and (ii) that neither Apple or a privy had been sued more than one year prior to the filing of the petition.

Although Apple never denied that the contracts existed, the Board repeatedly denied Achates any discovery of the Apple contracts. (A273-280; A343-344; A572-574). After the Board instituted the inter partes review, Apple admitted that it had one or more agreements with QuickOffice, but it continued to oppose discovery of the agreements. (A467; A573). The Board's refusal to grant discovery of the agreements between Apple and its co-defendants, including the Apple-QuickOffice agreement, was unreasonable given Apple's assertions, and given that the "may not institute" proscription of § 315(b) would render the inter partes review ultra vires if Apple's co-defendants were real parties in interest or privies.

The regulations provide that the Board may order discovery if the moving party shows "that such additional discovery is in the interests of justice." 37 C.F.R. § 42.51(b)(2). Here, the relationship between Apple and its co-defendants pertained to the very authority of the Board to conduct the proceeding, and so the interests of justice were paramount.

In other inter partes review proceedings, the Board has granted discovery of indemnity agreements, because a legal relationship bears heavily on the issue of

37

privy and real-party-in-interest.  *See Intel Corporation v. U.S. Int'l Trade Comm'n*,

946 F.2d 821 (Fed. Cir. 1991), rehearing denied (Oct. 24, 1991).  For example, in

*General Electric Company v. Transdata, Inc.*, IPR2014-01380, Paper 15,

November 12, 2014, the Board granted discovery of an indemnity agreement

pertaining to General Electric Company and an ongoing litigation arising from the

challenged patent. (A6374-A6384).

The Board's reasoning in *General Electric Company* starkly contrasts with

the Board's reasoning in this IPR.  In *General Electric Company*, the Board noted

that "[a] party seeking additional discovery need not prove its contention as a

prerequisite for obtaining the additional discovery."

In this matter, however, the Board rejected Achates discovery request

because Achates failed to persuade the Board "that the [indemnification] provision

would be indicative of the co-defendants being real parties-in-interest or privies of

Apple." (A277).  Furthermore, the Board was unconvinced that discovery was

"likely to uncover information useful to the instant proceedings:"

> The evidence and argument presented by Achates amount to
> only a mere allegation and speculation that one or more of the co-
> defendants are real parties-in-interest or privies of Apple, and do not
> convince us that the requested additional discovery is likely to
> uncover information useful to the instant proceedings.

(A279).

Like Apple in this case, the petitioner in *General Electric Company* opposed discovery because, in its view, the existence of the agreement could not give rise to privity.  The Board in *General Electric Company* rejected the argument and reasoned that the Board could not weigh the facts in advance of seeing the evidence. *General Electric Company*, Paper 15 at 6. (A6379).

The Board in *General Electric Compan*y also made the common sense observation that requiring the Patent Owner to prove its contention to obtain discovery deprives the patent owner of procedural protections:

> The parties are free to argue what they believe to be the appropriate inferences from the facts. At this juncture, we do not weigh the facts to determine the likelihood that Petitioner and OG&E have a privity relationship. Doing so would place Patent Owner in the precarious situation of having the burden to prove its contention in order to seek the evidence that supports that contention.

*General Electric Company*, Paper 15 at 6. (A6379).

Placing the Patent Owner in a "precarious situation" are other words for arbitrary or capricious, just as weighing the facts before seeing the evidence is arbitrary or capricious.  *See also Arris Group, Inc. v. C-Cation Technologies*, LLC, IPR2014-00746, Paper 15 (July 24, 2014) (Board grants discovery of an indemnity agreement). (A6385-A6390).

The Board in this IPR weighed the facts before seeing Apple's agreements and arrived at its decision arbitrarily and without observing procedures required by

its own regulations.  The Board's subsequent review and analysis of the sample

SDK agreement for its factual justification of its authority under § 315(b)

demonstrates the relevance and significance of the discovery sought by Achates.

The Board should have granted Achates the discovery so that it could have

analyzed Apple's actual agreements with its co-defendants.  The denial of this

discovery was an abuse of discretion, and, therefore, the Court should vacate the

Final Written Decision.

> **2.     The Board Arbitrarily and Capriciously Relied On An Agreement It Determined Was Not Evidence to Support Its Authority Under § 315(b)**

The Board compounded its error in denying Achates discovery of Apple's

actual agreements with its co-defendants by relying on the sample SDK agreement

to justify its fact-finding.  Initially, the Board determined that the sample SDK

agreement was not indicative of a legal relationship between Apple and its co-

defendants because Achates could not prove that it was signed:

> We first note that Patent Owner provides no proof that any of
> the co-defendants in the related litigation ever signed the SDK
> agreement. Patent Owner only provides evidence that "[a]t least
> defendants Electronic Arts, QuickOffice, and Symantec" sold
> applications through the Apple App Store. *Id*. at 10 (citing Exs. 2008-
> 10). The fact that these co-defendants sold applications through the
> Apple App Store does not demonstrate that they signed the specific
> SDK agreement cited by Patent Owner (Ex. 2006).

(A298).

But instead of ordering production of the actual signed contracts or dismissing Apple's petition for lack of authority, the Board treated the sample SDK agreement as if it stated the actual legal relationship between Apple and its co-defendants. (A295-301).  The Board then arbitrarily based its decision on material the Board already deemed was not evidence of Apple's relationship to its co-defendants.  (A295-301).

The existence of a QuickOffice and Apple contractual relationship was undisputed when the Board wrote the Final Decision.  It was also undisputed that QuickOffice had been sued more than one year before the filing of the petition, that Apple was unwilling to disclose the QuickOffice agreement, and that Apple was working very hard to keep the agreement(s) from Achates and the Board. Nevertheless, the Board based its Final Written Decision on the same faulty reasoning as the Decision to Institute the IPR and relied on the same sample SDK agreement that the Board considered insufficient to justify discovery because Achates did not prove any co-defendant executed the agreement.  Deriving its fact determinations from a sample SDK agreement the Board considered to be non-evidence is arbitrary or capricious.  (A8-12).  Therefore, this Court should vacate the Final Written Decision.

## VI.    CONCLUSION AND RELIEF REQUESTED

For the reasons given above, Achates requests that this Court vacate the Final Written Decision and mandate dismissal of the Petition.  Each of the reasons separately warrants vacating the Board's final decision.  The fact determinations concerning privy and real party in interest lack substantial evidence.  Because the Board misinterpreted § 315(b) and the Patent Office regulations, it erroneously put (and kept) the burden of proving the Board's lack of authority on Achates.  Then the Board throughout the proceedings arbitrarily and capriciously denied Achates discovery of Apple's agreements with its co-defendants.  Having refused to accept any evidence on the issues, the Board erroneously justified fact findings on a sample SDK agreement that it had previously determined did not indicate the legal relationships between Apple and its co-defendants who sold apps on the Apple App Store.  The resulting final decision was therefore ultra vires, and should be vacated.

The Court's mandate should be dismissal of the Petition because the Petition must itself demonstrate the evidence to support the Board's authority to institute an IPR.  Apple's petition fails to make the showing and should be dismissed.

42

Respectfully submitted,

December 3, 2014          /s/ Brad Pedersen
                         BRAD PEDERSEN
                         PATTERSON THUENTE PEDERSEN, P.A.
                         80 South Eighth Street, Suite 4800
                         Minneapolis, MN  55402
                         Telephone:  612-349-5740
                         Facsimile:    612-349-9266

                         *Counsel for Appellant*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing BRIEF OF APPELLANT ACHATES

REFERENCE PUBLISHING, INC.:

1. complies with the type-volume limitation of FED. R. APP.

   P. 32(a)(7)(B). This brief contains 8, 893 words, excluding the parts

   of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii) and FED.

   CIR. R. 32(b). Microsoft Word 2010 was used to calculate the word

   count.

2. complies with the typeface requirements of FED. R. APP. P. 32(a)(5)

   and the type style requirements of FED. R. APP. P. 32(a)(6). This brief

   has been prepared in a proportionally-spaced typeface using Microsoft

   Word 2010 in 14-point Times New Roman type style.


Date: December 3, 2014                    /Brad D. Pedersen/

44

## CERTIFICATE OF SERVICE

I hereby certify that on December 3, 2014, a true and correct copy of the

foregoing Brief of Appellant Achates Reference Publishing, Inc. was served on all

counsel of record through the appellate CM/ECF system.

December 3, 2014          /s/ Brad Pedersen
                          BRAD PEDERSEN
                          PATTERSON THUENTE PEDERSEN, P.A.
                          80 South Eighth Street, Suite 4800
                          Minneapolis, MN  55402
                          Telephone:  612-349-5740
                          Facsimile:   612-349-9266

                          *Counsel for Appellant*